## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

BUTTERBALL, LLC                                                         **PLAINTIFF**

V.                                              **CASE NO. 3:15-CV-3050**

JOHN R. ATKINSON; KATHERINE
GRAHAM ATKINSON; BOBBY HALL;
CRITERION ENERGY, LLC; JOURDON
ANDERSON; and HEATHER ANDERSON              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- Defendants John R. Atkinson's and Katherine Graham Atkinson's (collectively, "Atkinson Defendants") Motion for Summary Judgment (Doc. 50), Statement of Supporting Factual Positions (Doc. 51), and Brief in Support (Doc. 55); Plaintiff Butterball LLC's ("Butterball") Response in Opposition (Doc. 64) and Response to the Atkinson Defendants' Statement of Undisputed Facts (Doc. 65); and the Atkinson Defendants' Reply (Doc. 73) and Brief in Support (Doc. 74);

- Defendant Bobby Hall's Motion for Summary Judgment (Doc. 47), Amended Statement of Undisputed Material Facts in Support (Doc. 52), and Amended Brief in Support (Doc. 53); Butterball's Response in Opposition (Doc. 58) and Response to Mr. Hall's Statement of Undisputed Material Facts (Doc. 59); and Mr. Hall's Reply (Doc. 69); and

- Defendants Criterion Energy, LLC's ("Criterion"), Jourdan Anderson's, and Heather Anderson's (collectively, "Criterion Defendants") Motion for Summary Judgment (Doc. 44), Brief in Support (Doc. 46), Statement of Undisputed Material

1

Facts (Doc. 45), and Supplemental Statement of Undisputed Material Facts (Doc. 54); Butterball's Response in Opposition (Doc. 62) and Response to the Criterion Defendants' Statement of Undisputed Facts (Doc. 63); the Criterion Defendants' Reply (Doc. 70), Brief in Support (Doc. 71), and Reply to Butterball's Response to Their Statement of Undisputed Facts (Doc. 72); and the Criterion Defendants' First Amended and Restated Reply (Doc. 79) and Brief in Support (Doc. 80);

- Butterball's Motion to Strike (Doc. 75) and Brief in Support (Doc. 76); and the Criterion Defendants' Response in Opposition (Doc. 78);

- The Criterion Defendants' Motion to Extend Page Limit (Doc. 77); and

- Butterball's Second Motion to Strike (Doc. 82) and Brief in Support (Doc. 83); and the Criterion Defendants' Response in Opposition (Doc. 87).

For the reasons given below, both of Butterball's Motions to Strike are **GRANTED**; the Criterion Defendants' Motion to Extend Page Limit is **DENIED**; and all three Motions for Summary Judgment are **DENIED**.

## I. BACKGROUND

Butterball is a turkey-producing business that is organized as a limited liability company under the laws of North Carolina, where it is also headquartered. Butterball also has facilities in at least four other states, one of which is a feed mill facility in Green Forest, Arkansas. That facility, referred to throughout this Opinion and Order as "the GF Facility," forms the setting for the events that gave rise to this lawsuit.

Mr. Atkinson was employed by Butterball as the Feed Mill Manager at the GF Facility from May 2012 through September 2014, during which time he was responsible for the GF Facility's entire operation. Butterball alleges that while he was employed as

the GF Facility's Feed Mill Manager, Mr. Atkinson defrauded Butterball by causing it to pay invoices to the other Defendants for electrical services at the GF Facility that he knew had not actually been performed. Butterball contracted with a couple of companies called "Currently Electric, Inc." ("Currently") and "Powerhouse Electric, Inc." ("Powerhouse") for electrical services to be performed at the GF Facility. These two entities subcontracted these services out to another entity called "Haybird Specialties" ("Haybird"),[1] which Butterball alleges is a sham entity. Haybird then submitted the allegedly fraudulent invoices to Currently and Powerhouse, who innocently passed the bills along to Butterball, who unwittingly paid them. Butterball also contracted with Criterion for electrical services, which utilized Haybird in the same manner as Currently and Powerhouse—except that unlike those latter two entities, Butterball contends that Criterion was aware of the scam and deliberately participated in it.

Butterball alleges that Mr. Hall, the Andersons, and Ms. Atkinson all conspired with Mr. Atkinson to carry out this scheme. Mr. Hall worked in sales at Currently, and then at Powerhouse, while the scam allegedly transpired. Mr. Anderson also worked at Currently for a while during these events before founding Criterion, which was (and still is) owned and operated by him and his wife. Butterball's Second Amended Complaint (Doc. 26) asserts four counts: fraud, conversion, and civil conspiracy against all Defendants, and breach of fiduciary duties against Mr. Atkinson alone.

---

[1] Haybird Specialties is frequently referred to throughout the record as "Hi-Bird Specialties." Both monikers refer to the same entity, so for the sake of convenience and clarity, the Court will exclusively refer to that entity as Haybird Specialties throughout this Opinion and Order.

All Defendants have moved for summary judgment on all counts against them. In total, three such motions have been filed: one by the Atkinsons, one by Mr. Hall, and one by the Criterion Defendants. Additional motion practice has ensued over the contents and length of the Criterion Defendants' reply in support of summary judgment. Specifically, Butterball has twice moved to strike replies that were filed by the Criterion Defendants, and the Criterion Defendants have moved to extend the page limit for such replies. All six motions have been fully briefed and are now ripe for decision. After reciting the governing legal standard, the Court will consider and rule upon each of them.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure state that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For each motion, the Court must view the facts in the light most favorable to the party opposing summary judgment, and give that party the benefit of any logical inferences that can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

If the moving party meets this burden, then the opposing party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). These facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d

64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The nonmoving party must do more than rely on allegations or denials in the pleadings,

and the court should grant summary judgment if any essential element of the prima facie

case is not supported by specific facts sufficient to raise a genuine issue for trial."

*Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005)

(citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

## III. DISCUSSION

As recounted in Section I of this Opinion and Order, Butterball has brought claims

for fraud, conversion, and civil conspiracy against all Defendants, and a claim for breach

of fiduciary duty against Mr. Atkinson.   Before discussing the evidence, the Court will

recite the elements of each claim.

In Arkansas, the intentional tort of fraud contains five elements:

(1) that the defendant made a false representation of material fact; (2) that
the defendant knew that the representation was false or that there was
insufficient evidence upon which to make the representation; (3) that the
defendant intended to induce action or inaction by the plaintiff in reliance
upon the representation; (4) that the plaintiff justifiably relied on the
representation; and (5) that the plaintiff suffered damage as a result of the
false representation.

*First Ark. Bank & Trust, Trustee v. Gill Elrod Ragon Owen & Sherman, P.A.*, 2013 Ark.

159, *9–*10.  Each of these elements is essential to proving fraud, but when multiple

persons participate in a fraudulent scheme, the plaintiff does not need to prove that a

single person's actions satisfy all five elements.  *Stine v. Sanders*, 66 Ark. App. 49, 57

(1999).   Rather, "[e]ach party to a fraudulent transaction is responsible for the acts of

others in furtherance of the fraudulent scheme, and all who participate are liable for fraud."

*Id.*

As for the tort of conversion, it "is committed when a party wrongfully commits a distinct act of dominion over the property of another that is inconsistent with the owner's rights." *BBAS, Inc. v. Marlin Leasing Corp.*, 104 Ark. App. 63, 68 (2008). A person can be liable for conversion "notwithstanding that he or she acted in the utmost good faith and without knowledge of the true owner's title," so long as he intentionally exercised "dominion or control over the goods" and such exercise was "in fact inconsistent with the plaintiff's rights." *See id.* Accordingly, a plaintiff cannot recover punitive damages for an act of conversion unless the conversion is shown to have been committed "for the purpose of violating [the plaintiff's] right to the property or for the purpose of causing damages." *City Nat'l Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 188 (1990).

A civil conspiracy occurs when "two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 961 (2002). It is an intentional tort, requiring "a specific intent to accomplish the contemplated wrong." *Id.* "A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy." *Id.* In proving a conspiracy, "[a]ny act done or declaration made by one of the conspirators in furtherance, aid or perpetration of the alleged conspiracy may be shown as evidence against his fellow conspirators." *Mason v. Funderburk*, 247 Ark. 521, 529 (1969). The agreement may be proven by direct or circumstantial evidence, and it "may be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their

acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment." *Id.*

Finally, "a manager owes a fiduciary duty to his business," *Pennington v. Harvest Foods, Inc.*, 326 Ark. 704, 722 (1996), and may be liable to his employer "for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty," *Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 298 (1997). "The guiding principle of the fiduciary relationship is that self-dealing, absent the consent of the other party to the relationship, is strictly proscribed." *Id.*

Turning now to the facts of this case, it is useful to begin with the observation that several material facts are *not* in dispute here. All parties agree that Butterball contracted with Currently, Powerhouse, and Criterion for electrical services at the GF Facility. *See, e.g.*, Docs. 45 and 63, ¶¶ 20, 34, 39; Docs. 51 and 65, ¶¶ 22, 36, 40; Docs. 52 and 59, ¶¶ 19, 28. All parties agree that these three entities subcontracted work out to Haybird, that Haybird invoiced these three entities for the subcontracted work, that these three entities passed the bills along to Butterball, and that Butterball paid the bills. *See, e.g.*, Doc. 46, pp. 7–9; Doc. 53, p. 21; Doc. 74, pp. 1–2. Furthermore, and far more interestingly, although the parties do not agree on whether Haybird is a legitimate business, it appears indisputable, at a minimum, that Haybird is an unincorporated entity that is owned and managed by Mr. and Mrs. Atkinson. *See* Doc. 52-1 (IRS W-9 Form for Haybird, bearing the signature of "Katherine Graham"[2]); Doc. 52-3 (insurance receipt to Katherine Graham for Haybird); Doc. 52-4 (invoices from "Katherine Graham DBA Hibird Specialties"); Doc. 62-3, pp. 9–10 (deposition testimony of Mr. Anderson: "Q: What is

---

[2] Ms. Atkinson's full name appears to be Katherine Graham Atkinson.

Haybird? A: John Atkinson. Q: And why is that, that you say Haybird is John Atkinson? A: I didn't see anyone else. Q: And what do you mean, you didn't see anyone else? A: Anyone employed by Haybird.").

Equally interesting is that Mr. Atkinson and the Andersons all contend that Mr. Atkinson agreed to give Criterion contracts for electrical work at the GF Facility in exchange for personal kickbacks to him for 50% of Criterion's profits from those contracts. *See* Doc. 45, ¶¶ 29, 31; Doc. 51, ¶¶ 32–33. In the Court's view, this last contention is sufficient to create a material dispute of fact as to whether Mr. Atkinson breached his fiduciary duties to Butterball by exploiting his position as Feed Mill Manager of the GF Facility by engaging in self-dealing without obtaining Butterball's consent to do so. Therefore, Mr. Atkinson's summary judgment motion will be denied with respect to Butterball's claim against him for breach of fiduciary duties.

One very important thing on which the parties do not agree is whether Haybird actually performed the work for which it billed Currently, Powerhouse, and Criterion. The Defendants all contend that Butterball cannot provide any evidence that Haybird's work was not done, and they make much of the fact that Butterball's corporate representative under Rule 30(b)(6) does not know whether Haybird's work was ever actually done. *See* Doc. 52-5, pp. 28–29. But this overlooks the fact that when the individuals most likely to have any first-hand knowledge of this matter—the Atkinsons, who own and manage Haybird—were asked during their depositions whether Haybird actually performed any work for Butterball, they refused to answer the question, asserting their Fifth Amendment right against self-incrimination. *See* Doc. 64-8, p. 4; Doc. 64-9, p. 5. Since this is a civil case, a jury may properly infer from these refusals that the truthful answer, if given, would

8

have been "no." *See Baxter v. Palmigiano*, 425 U.S. 308, 317–19 (1976). Thus, there is a material factual dispute over whether Haybird's invoices contained materially false factual representations.

Another matter on which the parties do not agree is on whether, if Haybird submitted false invoices, it was justifiable for Butterball to rely on them. All the Defendants argue that since Butterball has a system in place for reviewing contractor bids and invoices, Butterball "cannot prove that it justifiably relied on anyone but itself." *See* Doc. 53. The Court disagrees. A jury may reasonably conclude that it was justifiable for Butterball to rely on the invoices that were submitted to it by Currently, Powerhouse, and Criterion, especially given that none of the parties have introduced any evidence that there was anything facially irregular about those invoices, and especially given that a critical component of Butterball's internal review process was the very GF Facility Feed Mill Manager who stands accused of masterminding the scam. *See* Doc. 52-5, p. 15 (Butterball's Rule 30(b)(6) deponent testifying that "essentially the feed mill manager is approving the bids, and it's his responsibility to make sure that, you know, the work that is on the bid to be done is legitimate").

Yet another matter on which the parties do not agree is, if Haybird submitted false invoices, whether Mr. Hall or the Criterion Defendants knew the invoices were false. Naturally, Mr. Hall and the Criterion Defendants all contend that they did not believe Haybird was engaging in fraudulent behavior. But Powerhouse's President has provided testimony that when Mr. Hall was employed at Powerhouse, Mr. Hall "regularly asked that Powerhouse Electric's checks to Haybird be given directly to him so that he could hand-deliver the checks to Haybird," which was an "abnormal" practice. (Doc. 58-5, p. 4, ¶ 17).

And the Andersons provided conflicting testimony on the purpose of Criterion's payments to Haybird; Ms. Anderson, who is Criterion's bookkeeper and office manager, *see* Doc. 58-3, p. 3, testified that the payments consisted solely of the aforementioned 50% kickbacks to Mr. Atkinson, *see* Doc. 58-4, p. 4, while Mr. Anderson testified that the payments consisted not only of kickbacks but also of payment and reimbursement for work and expenses that Mr. Atkinson performed and incurred when helping Criterion perform electrical work at Butterball, *see* Doc. 58-3, p. 6–7, 11–12, 14, 18–19. A jury could reasonably infer from this evidence, against the backdrop of the other facts already discussed in this Opinion and Order, that Mr. Hall and the Criterion Defendants all knew the Haybird invoices were false, and that they all participated in a scheme to conceal their falsity.

The Criterion Defendants attempt to bolster their argument that they believed everything was above-board by introducing into the record some forty pages' worth of handwritten accounting ledgers from 2013 and 2014, describing Criterion's payments made to and received from Haybird and Butterball, *inter alia*. *See* Docs. 71-1; 80-1. Butterball objects to any use of the 2014 records, which comprise thirty of those handwritten pages, on the grounds that the Criterion Defendants did not timely produce them in discovery despite being the subject of a properly propounded discovery request. Indeed, not only was their production untimely; it did not occur until after Butterball filed its Response in Opposition to the Criterion Defendants' summary judgment motion, two months after the discovery cutoff date set by the Amended Case Management Order. *Compare* Doc. 38, p. 2, *with* Doc. 76-1. These records were attached to the Criterion Defendants' Reply in Support of their summary judgment motion, the brief for which was

21 pages long—14 pages over the limit set by the Amended Case Management Order. *Compare* Doc. 38, p. 4 *with* Doc. 71. Accordingly, Butterball moved to strike the Criterion Defendants' Reply for failing to comply with the rules of discovery and with this Court's prior Order.

The Criterion Defendants do not deny any of Butterball's main factual contentions on this point, but they nevertheless ask to be excused for their foot-dragging in discovery because, they say, it took them a long time to find the 2014 records. *See* Doc. 78. They also ask for the reply-brief page limit to be extended because this is a complicated case. *See* Doc. 77. Alternatively, they filed an Amended Reply—after the reply deadline had already passed—which complies with this Court's page limit, but which still includes the challenged exhibit. *See* Docs. 79, 79-1. Butterball has also moved to strike this Amended Reply on the grounds that, again, the proffered exhibit is largely comprised of material that was improperly withheld during discovery.

The Court is going to deny the Criterion Defendants' Motion to Extend. It is true that this is a somewhat complicated case, but all of the other Defendants managed to comply with the page limit, and even the Criterion Defendants themselves managed to do so on their second (untimely) attempt. The Court does not believe that the facts or the law at issue here are so complicated or voluminous as to warrant uniquely granting the Criterion Defendants the requested extension.

The Court will also grant both of Butterball's Motions to Strike. The Amended Case Management Order explicitly warned the parties that "[w]itnesses and exhibits not identified and produced in response to Rule 26(a)(1) Initial Disclosures, and/or in response to subsequent discovery requests, may not be used at trial except in

extraordinary circumstances." (Doc. 38, pp. 2–3). Furthermore, Fed. R. Civ. P. 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, the Criterion Defendants have made no showing at all that their failure to timely produce the 2014 ledger was substantially justified, or that this is otherwise an extraordinary circumstance.  They offer no explanation of why it took so long for them to find these records, despite apparently having little to no difficulty timely producing equivalent records for 2013 and 2015.  And their untimely disclosure cannot be said to have been harmless either, given that Butterball has been deprived of any opportunity to conduct any follow-up discovery regarding the 2014 ledger.  One may expect that Butterball might have concerns about the document's authenticity, or desire clarification about the meaning of this or that entry.  If it had been timely produced, then Butterball would have been able to inquire along these lines when taking the Criterion Defendants' depositions.  It would be neither fair, nor reasonable, nor in keeping with the Federal Rules and this Court's prior Orders, for this Court to permit the Criterion Defendants to benefit from their failure to comply with their discovery obligations while denying Butterball the ability to conduct even the most basic of inquiry into this evidence.  Accordingly, the Criterion Defendants' summary-judgment Reply, Amended Reply, and supporting documents will all be stricken.

At this point, the Court does not believe there is any more that needs to be said, although there is much more that could be.  (For example, there are some rather

interesting allegations regarding spoliation of evidence that need not be taken up now.) As discussed above, it is abundantly clear from the record in this case that a jury could reasonably conclude that all of the Defendants conspired with each other to enrich themselves by causing Butterball to pay money for services that were never rendered; that Mr. and Ms. Atkinson, disguised as Haybird, submitted false invoices to Currently, Powerhouse, and Criterion; that Mr. Hall, Mr. Anderson, and Ms. Anderson, upon receipt of these invoices, bundled them into legitimate-seeming invoices from their own employers to Butterball; that all of the Defendants intended for Butterball to rely on these legitimate-seeming invoices to its detriment; that Butterball did in fact justifiably rely on those invoices as well as on Mr. Atkinson to approve them in his capacity as GF Facility Feed Mill Manager; that Butterball paid these invoices, thereby incurring damages; that Mr. Hall, Mr. Anderson, and Ms. Anderson directly funneled Butterball's money from their employers to Mr. Atkinson for services that were never performed; and that the Criterion Defendants split the profits they realized from this scam with Mr. and Mrs. Atkinson. If a jury were to so conclude, then that would satisfy all of the above-described elements for fraud, conversion, and civil conspiracy as to each Defendant.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

- Defendants John R. Atkinson's and Katherine Graham Atkinson's Motion for Summary Judgment (Doc. 50) is **DENIED**;

- Defendant Bobby Hall's Motion for Summary Judgment (Doc. 47) is **DENIED**; and

- Plaintiff Butterball, LLC's Motion to Strike (Doc. 75) is **GRANTED**, and Docs. 70, 71, and 72 are **STRICKEN**;

- Plaintiff Butterball, LLC's Second Motion to Strike (Doc. 82) is **GRANTED**, and Docs. 79 and 80 are **STRICKEN**;

- Defendants Criterion Energy, LLC's, Jourdan Anderson's, and Heather Anderson's Motion to Extend Page Limit (Doc. 77) is **DENIED**; and

- Defendants Criterion Energy, LLC's, Jourdan Anderson's, and Heather Anderson's Motion for Summary Judgment (Doc. 44) is **DENIED**.

**IT IS SO ORDERED** on this _28th_ day of March, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE